UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MIGUEL RAMOS, ON BEHALF OF ANNA RAMOS** | **CIVIL ACTION** |
| **VERSUS** | **NO: 08-0002** |
| **LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS, ET AL.** | **SECTION: "S" (1)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment on the Grounds Plaintiff Cannot Establish a *Prima Facie* Claim filed by defendants, the Louisiana Department of Health and Hospitals and Alan Levine, Secretary of the Louisiana Department of Health and Hospitals (substituting for Dr. Roxanne Townsend, former Secretary of the Louisiana Department of Health and Hospitals) (Doc. #93), is **GRANTED**, and plaintiff's claims are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #105) is **DENIED**.

## BACKGROUND

Plaintiff, Miguel Ramos, filed this action as curator on behalf of his daughter, Anna Ramos. Anna Ramos is a disabled person who has cerebral palsy, developmental disability, and other

conditions, many of which are secondary to her cerebral palsy. Anna Ramos is wheelchair bound.

The state defendants, the Louisiana Department of Health and Hospitals ("DHH") and Alan Levine, Secretary of the Louisiana Department of Health and Hospitals (substituting for Dr. Roxanne Townsend, former Secretary of the Louisiana Department of Health and Hospitals), run a program of group homes for persons with developmental disabilities. DHH licenses private group home providers who run some of the group homes. The group home program is structured so that the group homes provide different levels of care commensurate with the nature of the disabilities. For example, one group home may limit its residents to individuals who can function somewhat independently, while another group home may focus on individuals who have more profound disabilities. The private group home providers receive the majority of their funding from Medicaid, which pays a *per diem* rate for each resident. The federal government supplies approximately eighty percent of the funds for the Medicaid payments, and fifty percent of DHH's cost of administering the Medicaid program.

Since 2000, Anna Ramos has resided in privately run group homes licensed by DHH that are equipped to care for her needs. Until August 2005, she resided in a group home in Jefferson Parish, Louisiana run by Res Care. Her family, who lived near the group home, visited her often and monitored her care. In anticipation of Hurricane Katrina, Res Care evacuated her to one its group homes in Austin, Texas that could care for her needs.

After the storm, Miguel Ramos sought placement for Anna Ramos in a group home in Orleans Parish or Jefferson Parish, Louisiana so that she could be closer to her family. In January 2007, Anna Ramos applied for admission to the Idaho Group Home in Jefferson Parish, Louisiana

that was run by Progressive Healthcare Providers ("PHP"). PHP denied her application because the Idaho Group Home was not accessible for people who use wheelchairs. Also, in February 2007, Anna Ramos applied for admission to Hancock Home, a group home in Jefferson Parish, Louisiana run by Crossroads of Louisiana. In April 2007, she was denied admission to Hancock Home because Crossroads did not have transportation resources available to accommodate her wheelchair use, and because the bathroom door at Hancock Home was too narrow to accommodate a wheelchair.

In June 2007, Res Care transferred Anna Ramos to a group home in Rayne, Louisiana, which is approximately 150 miles west of Jefferson Parish, Louisiana. Then in January 2008, Anna Ramos returned to Jefferson Parish, Louisiana, when Res Care moved her to its Angus Group Home in Harvey, Louisiana.

Plaintiff filed this suit against the state defendants alleging that they violated Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 791, et seq., by failing to make their group home program readily accessible to persons who use wheelchairs. Plaintiff contends that the state defendants fail to ensure non-discrimination against persons who use wheelchairs because they do not require each private group home provider to either accept persons who use wheelchairs at all facilities, or to provide an alternate facility in the same region of the state when wheelchairs cannot be accommodated at a facility in a particular region. Plaintiff claims that the state defendants' discrimination prevented Anna Ramos from partaking in a benefit of the group home program, particularly being able to live in a group home near her family. Plaintiff seeks an injunction requiring the state defendants to make

the private group home providers that do not accept persons who use wheelchairs at their facilities in Orleans Parish and Jefferson Parish, Louisiana either to accept such individuals at those facilities, or to provide alternate group homes for those individuals in Orleans Parish or Jefferson Parish, Louisiana. Plaintiff also seeks monetary damages for Anna Ramos' alleged emotional distress caused by her separation from her family for two and a half years.

## ANALYSIS

**A.     Summary Judgment Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

### B. Plaintiffs' ADA and Rehabilitation Act Claims

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides in pertinent part that:

> [n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .

29 U.S.C. § 794(a).

Similarly, Title II of the ADA provides that:

> no qualified individual with a disability shall, by reason of such disability be excluded from participation in or be denied the benefits of the services, programs, or activities, of a public entity, or be subjected to discrimination by such entity.

42 U.S.C. § 12132. A "public entity" includes any State or local government and any department agency, special purpose district, or other instrumentality of a State or States or local government. Id. at § 12131(1)(A)-(B).

Title II of the ADA is substantially similar to Section 504 of the Rehabilitation Act, and Congress intended "that Title II extend the protections of the Rehabilitation Act 'to cover all programs of state or local governments, regardless of the receipt of federal financial assistance' and that it 'work in the same manner as Section 504." Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000), reh'g *en banc* denied, 216 F.3d 1081 (5th Cir. 2000), cert. denied, 121 S.Ct. 384 (2000) (quoting H.R.Rep No. 101-485, pt III at 49-50 (1990), reprinted in, 1990 U.S.C.C.A.N. 445, 472-73). Further, the Title II of the ADA specifically provides that its remedies, procedures, and rights shall be the same as those available under Section 504 of the Rehabilitation Act. Id. (quoting 42 U.S.C. § 12133). Thus, jurisprudence interpreting either Title II of the ADA or Section 504 of the

Rehabilitation Act is applicable to both. Id. (citing Gorman v. Bartch, 152 F.3d 907 (8th Cir. 1998).

To establish a *prima facie* case under § 504 of the Rehabilitation Act a plaintiff must prove: (1) that she is a qualified individual with a disability; (2) that she was excluded from participation in, denied benefits of, or subjected to discrimination under the Defendant's program solely because of her disability; and (3) that the program in question receives federal financial assistance. 29 U.S.C. § 794(a).

Similarly, to establish a *prima facie* case of discrimination under Title II of the ADA, a plaintiff must prove: (1) that she is a qualified individual with a disability; (2) that she has been excluded from participation in, or denied the benefits of the services, programs, or activities of a public entity, or otherwise discriminated against by such entity; and (3) that such exclusion or discrimination was by reason of her disability. 42 U.S.C. § 12132; Lightbourne v. County of El Paso, Tex., 118 F.3d 421, 428 (5th Cir. 1997).

While it is possible for discrimination to consist of disparate treatment among members of the same protected class, Olmstead v. L.C. *ex rel.* Zimring, 119 S.Ct. 2176, 2186, n. 10 (1999), in Traynor v. Turnage, 108 S.Ct. 1372, 1382 (1988), the Supreme Court of the United States stated that "the central purpose of § 504, . . . is to assure that handicapped individuals receive 'evenhanded treatment' in relation to nonhandicapped individuals." Further, the United States Court of Appeals for the Sixth Circuit has held that the ADA prohibits discrimination between the disabled and the non-disabled, but "does not mandate equality between individuals with different disabilities." Lenox v. Healthwise of Ky., Ltd., 149 F.3d 453, 457 (1998); (quoting Parker v. Metropolitan Life Ins. Co., 121 F.3d 1006, 1019 (6th Cir. 1997)). Similarly, the United States Court of Appeals for the

Second Circuit has stated that the Rehabilitation Act "does not require all handicapped persons to be provided with identical benefits. Rather, it seeks to ensure that handicapped individuals have an opportunity to participate in and benefit from programs receiving federal assistance." P.C. v. McLaughlin, 913 F.2d 1033, 1041 (2nd Cir. 1990) (citing Traynor, 108 S.Ct. at 1382; Alexander v. Choate, 105 S.Ct. 712, 721 (1985)).  Further, 28 C.F.R. § 35.150(a) provides that to comply with the ADA "[a] public entity shall operate each service, program, or activity so that the service, program or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." (emphasis added).

The parties do not dispute that Anna Ramos is a qualified individual with a disability, nor do they dispute that DHH's group home program receives federal financial assistance.  Further, the parties do not dispute that at all pertinent times, Anna Ramos participated in the group home program by living in a group home that could care for her needs.

However, the parties dispute whether Anna Ramos was discriminated against because she uses a wheelchair vis-a-vis other disabled persons who do not use wheelchairs.  Plaintiff contends that Anna Ramos was discriminated against due to her wheelchair use because the group homes with vacancies Jefferson Parish, Louisiana after Hurricane Katrina would not accept her because they could not accommodate her wheelchair use. Specifically, plaintiff argues that Anna Ramos was denied the benefit of living in a group home near her family because the state defendants did not require all private group home providers in Orleans Parish and Jefferson Parish, Louisiana to either accept persons who use wheelchairs at all group home facilities, or to provide an alterative group home in the same area that can accommodate wheelchairs.

Plaintiff has not proved a *prima facie* case under either the § 504 of the Rehabilitation Act or Title II of the ADA.  Plaintiff does not claim that Anna Ramos was deprived of services as compared to non-disabled people, but rather that her group home options are more limited than the options available to disabled people who do not use wheelchairs.  However, plaintiff admits that Anna Ramos received the benefit of the group home program by living in a group home that could care for her needs.  Thus, when viewed in its entirety, the group home program did not discriminate against Anna Ramos due to her wheelchair use.  The group home program does not guarantee placement in a particular area, nor do the ADA and Rehabilitation Act require that all disabled persons be provided with identical benefits.  Indeed, if they did, the programs for the disabled, such as the group home program, may become unworkable and disabled individuals would not receive the appropriate care that fits their specific needs.

## CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment on the Grounds Plaintiff Cannot Establish a *Prima Facie* Claim filed by defendants, the Louisiana Department of Health and Hospitals and Alan Levine, Secretary of the Louisiana Department of Health and Hospitals (substituting for Dr. Roxanne Townsend, former Secretary of the Louisiana Department of Health and Hospitals) (Doc. #93), is **GRANTED**, and plaintiff's claims are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #105) is **DENIED**.

New Orleans, Louisiana, this  25th  day of October, 2010.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**